CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
1/30/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| **VERNA BOGGS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:16-CV-50 |
| | ) |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Verna Boggs ("Boggs") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act").  42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Boggs alleges that the ALJ erred by failing to give the opinion of her treating physician proper weight and failing to properly evaluate her credibility. I conclude that the ALJ failed to adequately explain the reasoning for the weights assigned to the physician opinions in the record.  Consequently, I **RECOMMEND GRANTING in part** Boggs' Motion for Summary Judgment (Dkt. No. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), and **REVERSING** and **REMANDING** this matter for further administrative consideration consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Boggs failed to demonstrate that she was disabled under the

Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding the weight given to Boggs' treating physician.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Boggs filed applications for SSI, DIB and disabled widow's benefits in October 2012, claiming that her disability began on November 22, 2009. R. 211–26. The Commissioner denied Boggs' applications at the initial and reconsideration levels of administrative review. R. 80, 114. ALJ Brian P. Kilbane held an administrative hearing on May 19, 2015, to consider Boggs' disability claim. R. 36–51. Boggs was represented by an attorney at the hearing, which included testimony from Boggs and vocational expert Arthur Brown. Id.

On June 26, 2015, the ALJ entered his decision analyzing Boggs' claim under the familiar five-step process,[2] and denying Boggs' claim for disability. R. 12–30. The ALJ found that Boggs suffered from the severe impairments of fracture of the lower extremity, osteoarthrosis and allied disorders. R. 15. The ALJ determined that Boggs' severe impairments did not meet or medically equal a listed impairment, and that she retained the RFC to perform medium work, except occasional left lower extremity operation of foot controls and pushing/pulling; frequent balancing and occasional climbing of ladders, ropes and scaffolds. R. 16. The ALJ determined that Boggs is capable of performing her past relevant work as a cashier and painter, and thus is not disabled. R. 28. Boggs appealed the ALJ's decision and the Appeals Council denied her request for review on July 22, 2016. R. 1–4. This appeal followed.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Boggs asserts that the ALJ failed to properly evaluate and explain the weight given to the opinion of her treating orthopedic surgeon, Robert Adelaar, M.D. Boggs has a history of ankle injury and arthritis. Specifically, Boggs fractured her left ankle and underwent four surgeries between December 2009 and June 2012: an open reduction and internal fixation of unstable fracture (December 20, 2009, R. 325); ankle hardware removal (June 30, 2010, R. 334); surgical repair; (Spring 2011, R. 883); and subtalar fusion with proximal tibial bone grafting (June 26, 2012, R. 379.)

In April 2011, after her third ankle surgery, Boggs visited M. Truitt Cooper, M.D., and complained of pain, weakness and swelling in her left ankle. R. 312. Boggs reported occasionally using an ASO brace, and that the pain was worse with activity and better with rest. Upon exam, Dr. Cooper noted that Boggs had a slight antalgic gait on the left, her incisions were well-healed, she had mild swelling, and she had tenderness and reduced range of motion. Her motor strength was intact and she had no instability. Dr. Cooper reviewed x-rays which revealed mild osteopenia, some minimal degenerative changes and anatomic alignment of the distal fibula. Dr. Cooper stated, "I had a long talk with Verna. She has been dealing with this since her surgery. She has had three surgeries on the ankle and I am not sure that there is much can be done to resolve her pain fully. I would recommend compression stocking as needed for swelling as well as continued exercise as much as possible, taking anti-inflammatories as needed." Id. On April 22, 2011, Boggs returned to Dr. Cooper and reported severe constant pain around her left ankle and tingling at the end of her toes. R. 313. She also reported that she had not been wearing any type of boot or participating in exercises. Upon exam, Boggs had antalgic gait on the left, minimal swelling, well-healed incision, positive Tinel's over her peroneal nerve, intact

4

sensation and pedal pulses. Boggs' ankle range of motion was 5 degrees of dorsiflexion and 35 degrees of plantar flexion. Dr. Cooper recommended compression stocking during the day and an ASO brace when active, and explained the importance of working on physical therapy exercises. He also injected her ankle joint. Id.

Boggs continued to complain of left ankle pain, and an MRI taken on October 26, 2011, revealed the need for a fusion of her joint. R. 344–45, 383–84. Boggs initially visited Dr. Adelaar on November 14, 2011, with a swollen left ankle with no subtalar motion, tenderness "everywhere" and diminished sensation over the dorsum of her foot. R. 346–47. Dr. Adelaar diagnosed left ankle arthritis, possible subtalar coalition, and performed a subtalar injection. Id. Boggs returned to Dr. Adelaar in January, March, and May of 2012, with continued complaints of persistent left ankle pain and swelling. R. 348–49, 358–63. Upon examination, her ankle was tender with mild to moderate swelling, reduced range of motion, intact sensations and pulses and no discoloration. Id. Boggs reported that walking on unlevel ground tended to exacerbate her foot pain. She was given pain medication and injections to her subtalar joint. Id.

On June 26, 2012, Dr. Adelaar performed a left subtalar fusion and tibial bone graft for Boggs' left subtalar arthritis. R. 375–380. On July 9, 2012, Boggs reported that her pain was well controlled with medication and she had been non-weight bearing on her left lower extremity post-surgery. R. 364–65. She was doing well post-operatively. Id.

Boggs followed up with Dr. Adelaar in August 2012, and reported doing well without significant pain. She had mild swelling and was given a Cam boot to bear weight as tolerated. R. 366–69. In September 2012, Boggs complained of pain in her ankle joint and heel and reported wearing the Cam boot but still using crutches. R. 370–71. Upon exam, Boggs had intact sensation, ability to flex and extend, dorsiflex and plantar flex. She was prescribed Tramadol and

5

referred to physical therapy. She was also advised to wear regular shoes and bear weight as tolerated. Id. Boggs returned in December 2012, and reported that "everything is going well with physical therapy." R. 391. She noted achy pain from swelling if she stands or walks for long periods of time. The swelling goes down if she elevates her leg and compression socks help. X-rays showed midfoot osteoarthritis status post subtalar fusion and some posttraumatic deformity of the posterior and lateral malleolus. Upon exam, Boggs was able to flex and extend her toes and had good dorsiflexions and plantar flexion of the foot with good strength. Dr. Adelaar noted that Boggs is improving, has a lot of pain with swelling but "this seems more about a vascular issue." Dr. Adelaar recommended better compression socks or an Ace wrap, and suspected that her pain should get better. Dr. Adelaar also recommended continuing physical therapy. Id.

Boggs participated in physical therapy from October 2012 through December 2012, and was discharged to a home exercise program. R. 621–635. The physical therapist noted that Boggs is moving better and is capable of taking normal strides when she is not thinking about her gait pattern. R. 622. Boggs continued complaining of pain in her left ankle when she stands for a long time or walks for a long time. R. 625.

Boggs continued to complain of left ankle pain and balance issues. R. 593. On December 2, 2013, Boggs visited her family doctor and stated that her left ankle pain was getting worse, her balance is still off, ankle feels week and she takes Tramadol for pain. R. 1254. Upon exam, Boggs had minimal edema in her left ankle and decreased range of motion due to pain. R. 1255. She was referred to physical therapy and an orthopedic specialist. Id.

Boggs returned to see Dr. Adelaar and Erin Bigelow, PA, on March 24, 2014, complaining of ankle pain, swelling, occasional numbness and tingling. Upon examination,

6

Boggs had minimal swelling, tenderness to palpation over the anterior ankle, improved range of motion with dorsiflexion to about 10 degrees. Bigelow recommended an ankle injection and continued physical therapy. R. 981–82. Boggs participated in physical therapy from February 2014 through April 22, 2014. R. 970–76, 985–99. Upon discharge Boggs reported that "therapy helped some but much of her pain remains." R. 972. The physical therapist Jeb Helms, PT, noted that Boggs:

> has done well in therapy and has great potential to continue to manage her pain and impairments on own with H[ome] E[xercise] P[lan]. Her functional status continues to improve evidenced by her dynamic balance improvement on the rockerboard today. Feel that low impact jobs on her ankle may be a viable alternative to disability in future but will defer to final recommendation on return to work to MD.

R. 976.

Boggs visited Dr. Adelaar on June 9, 2014, and noted that the previous injection into her left ankle joint improved her pain for approximately one month and that her pain steadily returned, limits her ability to walk, causes problems standing on her feet and limits her ability to engage in activities of daily living. R. 965. A physical exam revealed that she had no motion in her subtalar joint, but full range of motion in her tibiotalar and midfoot joints. She was diagnosed with traumatic arthritis, prescribed Voltaren and given a lace-up ASO brace. R. 966. Boggs continued to follow up with Dr. Adelaar in July, September, and November 2014, with complaints of pain in her left foot and ankle and swelling when not wearing the ASO brace. R. 901, 936, 944. Exams reflected tenderness and some paresthesias over her left ankle and foot, mild swelling, but intact sensation and pulses. Id. On January 19, 2015, Dr. Adelaar noted that Boggs had a good outcome from her most recent fusion surgery although she still reported having some pain. Upon examination, Boggs' pain was minimal and improved over the course of the last several months. Dr. Adelaar noted, "[s]he has preserved ankle motion and somewhat

midfoot motion that is pain free." Dr. Adelaar reviewed a recent CT scan and noted that Boggs has minimal arthrosis over the talonavicular and calcaneocuboid joints. R. 886. Dr. Adelaar concluded that Boggs has "progressed nicely at this time. Limited pain will be managed by rocker bottom shoe and a longitudinal for arch support that could be acquired on an outpatient basis. She was recommended to take over-the-counter anti-inflammatories if needed for pain." Id.

On November 21, 2013, Dr. Adelaar completed a "Lower Extremity Impairment Questionnaire," and noted that Boggs was diagnosed with left subtalar arthritis, left ankle arthritis, and left fracture of ankle. R. 883. Dr. Adelaar cited Boggs' four ankle surgeries. Id. Dr. Adelaar noted that Boggs has a history of chronic joint pain and stiffness in her left ankle and subtalar, and has marked limitation of motion with 5 degrees of extension and 20 degrees of flexion in her left ankle. Id. Dr. Adelaar noted that Boggs has bony/fibrous ankylosis, and joint space narrowing in her left ankle. Id. Dr. Adelaar determined that due to her condition, Boggs is limited to standing and walking for 2 hours total in an 8 hour workday and 20 minutes at one time, and needs a cane to walk or stand safely. Id. Dr. Adelaar found that Boggs can use standard public transportation and climb a few steps at a reasonable pace with the use of a single hand rail without assistance or support. Id. Dr. Adelaar determined that Boggs would have difficulty walking a block at a reasonable pace on rough or uneven surface and carrying out routine ambulatory activities, such as shopping and banking. Id. Dr. Adelaar noted that these limitations existed since December 2009 because Boggs' surgery in 2009 was the cause of her left ankle arthritis. R. 884. Under "additional comments," Dr. Adelaar noted:

> Pilon f[racture] to left ankle which Dr. Mark Wills fixed and then removed hardware developed into a traumatic ankle arthritis. The injury which caused the pilon f[racture] also caused stiffness and arthritis in left subtalar joint which led to the fusion we did in June 2012.

8

R. 885.

The ALJ reviewed Boggs' medical records and considered Dr. Adelaar's opinion and gave it "little to no weight." R. 27. The ALJ stated:

> While Dr. Adelaar is a treating physician with a relatively longitudinal treating relationship with the claimant, his findings and opinion are not consistent with or supported by the other evidence of record, including his own treatment notes. Also, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion, and the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, seeming to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. In addition, the undersigned rejects Dr. Adelaar's conclusory opinion that the claimant is essentially unable to work because that is an opinion on an issue of disability reserved to the Commissioner of Social Security…and it is not supported by the longitudinal record with its limited physical findings and generally routine and conservative treatment.

R. 27.

The ALJ also considered the statement from Jeb T. Helms, PT, on April 22, 2014 that "low impact jobs on her ankle may be a viable alternative to disability in the future." R. 976. The ALJ gave this opinion little to no weight, noting that Helms is not an acceptable medical source, and that his conclusion that Boggs is limited to low impact jobs is not supported by the record as a whole or his own treatment notes stating that Boggs' "functional status continues to improve," and she had "dynamic balance improvement." R. 27.

The ALJ gave great weight to the opinions of state agency physicians Joseph Familant, M.D. and William Amos, M.D. that Boggs is capable of performing a range of medium work, finding them to be supported by "other evidence of record." R. 28, 57, 87–88. Specifically, the state agency physicians concluded that Boggs was capable of lifting/carrying 25 pounds frequently and 50 pounds occasionally; standing/walking for 6 hours in an 8 hour workday;

9

sitting for 6 hours in an 8 hour workday; would have limited ability to push and pull with her left lower extremity; and could only occasionally climb ladders, ropes and scaffolds. R. 57, 87–88. The ALJ provided no explanation for his assignment of great weight to the state agency opinions. Id.

Boggs asserts that the ALJ erred by giving no weight to Dr. Adelaar's opinion, and by providing an insufficient explanation for his assignments of weight overall, violating the standards recently reiterated by the Fourth Circuit in Mascio v. Colvin and Monroe v. Colvin. The Commissioner asserts that the ALJ provided sufficient explanation for his assignment of weight to the physician opinions, and was entitled to reject Dr. Adelaar's opinion because it was conclusory, provided very little explanation of the evidence used to form the opinion and was "apparently" based on the uncritical acceptance of Boggs' subjective report of symptoms and limitations. Def. Br. Summ. J. p. 8–9.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[3] 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's

---

[3] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920(c)(a). However, the claim in the present case was filed before March 27, 2017, and the court has therefore analyzed Boggs' claims pursuant to the treating physician rule set out above.

medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

In a recent decision, the Fourth Circuit held that the ALJ erred by affording controlling weight to the opinion of a non-treating, non-examining physician over the claimant's treating physicians. Brown v. Comm'r, 873 F.3d 251, 268 (4th Cir. 2017). The Court determined that in addition to "flouting the treating physician rule," the ALJ's reliance on the non-treating physician's opinion was not justified by any 20 C.F.R. § 404.1527(c) factors that would warrant crediting the opinion of a non-treating source. Id. Similarly, here the ALJ gave the greatest weight to the opinions of two physicians who did not examine or treat Boggs, and gave little or no weight to her treating orthopedic physician and her treating physical therapist. The ALJ provided no explanation for the great weight given to opinions of the non-examining physicians, beyond simply stating that their conclusions are supported by "other evidence of record." R. 28. Further, the ALJ provided an insufficient explanation as to why he gave no weight to the opinion of Boggs' treating orthopedist, Dr. Adelaar.

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's

assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)).  However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. See Brown, 2017 WL 4320263 at *14; Monroe, 826 F.3d at 189–91.  The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189.  The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190.  "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)).

With regard to Dr. Adelaar's opinion, the ALJ noted that Dr. Adelaar's "findings and opinion are not consistent with or supported by the other evidence of record, including his own treatment notes."  The ALJ did not cite to any specific treatment notes or other evidence of record that conflicts with Dr. Adelaar's opinion. These types of general statements, without

12

explanation, are insufficient to support an RFC determination. See Lewis v. Colvin, 2013 WL 6839505, at *5 (An ALJ's conclusion that a physician's opinion "is not entirely consistent with the medical evidence as a whole," without more, is insufficient to support his RFC findings); Pearson v. Colvin, No. 4:12CV23-FL, 2013 WL 3243550, at *4 (E.D.N.C. June 26, 2013) (An ALJ's conclusion that an opinion was "out of proportion to the longitudinal and objective record" is merely conclusory and lacks any meaningful factual comparisons.)   In Monroe v. Colvin, the ALJ gave a physician's opinion limited weight based on a determination that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings." 826 F.3d 176, 191 (4th Cir. 2016).  The ALJ in Monroe did not specify what objective evidence or aspects of the claimant's treatment history he was referring to.  The court held that the ALJ's analysis was incomplete and precluded meaningful review. Id. at 191.

Further, there is no readily apparent conflict between the record evidence, including Dr. Adelaar's treatment notes, and his opinion, such that the inconsistencies referred to by the ALJ are exempt from specific mention.[4]  The only obvious evidence conflicting with Dr. Adelaar's conclusions in the record is the state agency physicians' opinions, which the ALJ gave great weight without providing any explanation. The record consistently reflects that Boggs experienced pain and swelling in her left ankle with prolonged standing and walking. R. 391, 593, 625, 901, 936, 944, 965, 972, 976, 981–82, 1254. This evidence supports, rather than contradicts, Dr. Adelaar's conclusion that Boggs would be limited in her ability to stand and walk for more than two hours at a time.

---

[4] The Commissioner points to evidence discussed earlier in the ALJ's decision that allegedly conflicts with Dr. Adelaar's opinion.  Def. Br. Summ. J. p. 7.  However, the Commissioner cannot provide reasoning for the ALJ's decision that is not apparent in the ALJ's decision itself.  See Albertson v. Astrue, No. 1:10-1618-RMG,  2011 WL 3020999, at *2 (D.S.C. July 22, 2011).

The ALJ also stated that Dr. Adelaar's "opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion…" Dr. Adelaar's opinion is provided on a checklist form; however, it is notable that Dr. Adelaar included handwritten notes with almost every question on the form, including a separate handwritten paragraph under "Additional Comments." R. 883–84.

The ALJ also found that Dr. Adelaar "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, seeming to uncritically accept as true, most, if not all, of what the claimant reported." R. 27. Again, the ALJ provides no citation or other support for his conclusion that Dr. Adelaar's opinion is based heavily on Boggs' subjective reports. Finally, the ALJ rejects Dr. Adelaar's opinion that Boggs is essentially unable to work because "the issue of disability is reserved to the Commissioner." R. 27.

Overall, the ALJ's explanation of the degree of weight he gave the state agency physicians and Dr. Adelaar's opinion lacks the required "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636.; see also Radford v. Colvin, 734 F.3d 288, 295–96 (4th Cir. 2013) (ALJ's rejection of opinions of treating physicians in favor of the state medical examiners without explanation raises red flags because the state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians).

Given the ALJ's failure to fully and adequately explain the weight given to the physician opinions in the record, I cannot find that the ALJ's decision is supported by substantial evidence. The ALJ may be correct in his analysis of the opinion evidence and his finding that Boggs is capable of performing medium work, but he needs to provide additional explanation to support that determination. "The ALJ is obligated to both identify specific evidence from the medical

14

opinions that he found inconsistent with the medical evidence as a whole, and also to explain 'the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim.'" Lewis v. Colvin, No. CBD–11–1423, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013) (citing King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980)).[5]

## CONCLUSION

For the reasons set forth above, I **RECOMMEND DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Boggs' motion for summary judgment and **REVERSING** and **REMANDING** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

---

[5] Boggs also asserts that the ALJ erred in discounting her credibility based upon irrational attacks of her statements and the evidence, and failed to properly analyze her impairments under Listing 1.02(A). I note that the ALJ's analysis of Listing 1.02(A) is succinct, potentially to the point of lacking a full and proper explanation. See Radford v. Colvin, 734 F.3d 288, 295–96 (4th Cir. 2013). I suggest that the Commissioner review these particular issues upon remand as well.

Enter: January 30, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge